John W. Goff v. Commissioner.
Goff v. Commissioner
Docket No. 3185-62.
United States Tax Court
T.C. Memo 1964-114; 1964 Tax Ct. Memo LEXIS 221; 23 T.C.M. (CCH) 654; T.C.M. (RIA) 64114; April 28, 1964
*221 Held, the cancellation by petitioner of an obligation by his divorced wife to pay him $2,500 upon the sale of a residence which had been conveyed to her in a property settlement incident to the divorce and for which obligation she was in possession of funds with which to pay at the time petitioner canceled it, was not a periodic payment under section 71(a)(1), I.R.C. 1954, and is not deductible by petitioner from his gross income. Earle J. Niederluecke and Louis J. Portner, 509 Olive St., St. Louis, Mo., for the petitioner. Gerald S. Walsh, for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income tax for the taxable year ended December 31, 1960, of $1,198.35. The deficiency is due to an addition to the income reported on petitioner's return of "(a) Alimony disallowed $2,500.00." Adjustment (a) is explained in the deficiency notice as follows: (a) On your return for the taxable year 1960, you claimed a deduction in the amount of $4,200.00 for alleged alimony paid to your former wife, Martha Lee Goff. The said claimed deduction of $4,200.00 included the sum of $2,500.00 representing your waiver or release of your right to receive a payment of $2,500.00 from your former wife upon the sale of her residence. It is held that the aforesaid sum of $2,500.00 is not includible in the income of your former wife and you are, therefore, not entitled to the deduction of that amount. Accordingly, your taxable income, as reported, for the taxable year 1960 is increased in the amount of $2,500.00. *223 Error was assigned by the petitioner as follows: (4) The Commissioner has erred in the following respects: (a) By refusing to allow an alimony deduction of $2,500.00, that was an obligation contained in a written stipulation incidental to a divorce between the petitioner and his former wife; * * * There was another issue raised by the petition in the alternative which was to the effect that if the $2,500 was not allowed by the Court as a deduction for alimony paid to his former wife it should be allowed as a deduction for a bad debt. That issue has been abandoned by petitioner and therefore it will not be discussed any further. Findings of Fact A stipulation of facts was filed by the parties with several exhibits attached thereto. The stipulation of facts and the exhibits attached thereto are incorporated herein as a part of these Findings of Fact. There was also some oral testimony. Petitioner John W. Goff is an individual whose residence is at Kirkwood, Missouri. He filed his individual Federal income tax return for the taxable year 1960 with the district director of internal revenue at St. Louis, Missouri. Petitioner was married to Martha Lee Goff during the early *224 months of 1958 and for several years prior thereto. Two children were born of this marriage. On November 1, 1957, petitioner and Martha purchased a personal residence in St. Louis County, Missouri. Petitioner borrowed the sum of $2,500 on his life insurance policies in order to purchase this home and make a substantial down payment on it. During the early part of 1958 petitioner and Martha entered into negotiations which contemplated the filing of a subsequent divorce action by Martha. As a result of these negotiations petitioner and Martha entered into an agreement on May 15, 1958. The relevant portions of that agreement are as follows: AGREEMENT Memorandum of Agreement made and entered into by and between John W. Goff, of the County of St. Louis, State of Missouri, Party of the First Part, and Martha Lee Goff, of the County of St. Louis, Missouri, Party of the Second Part, in the manner following: WHEREAS, the said parties above mentioned have heretofore been legally married and lived together as husband and wife in the County of St. Louis, Missouri, and that Party of the Second Part has instituted an action for divorce against Party of the First Part in the Circuit Court *225 of the County of St. Louis, Missouri, being cause number 223, 240 in the Domestic Relations Court, and the said parties desire to adjust, settle and determine all rights of property now existing, or which may hereafter arise, between them by reason of their relationship, insofar as the same may be lawfully and properly settled and adjusted by them. * * *
That in the event the Court before which this divorce shall be tried shall upon the trial of the said cause, make and enter its decree herein, granting to Party of the Second Part a divorce from the bonds of matrimony from the Party of the First Part, then the settlement hereinafter provided to be made shall at once take effect and operate as a settlement in lieu of and in full settlement of all rights, claims and interest which either party hereto may now have or may hereafter acquire in the property of the other; that this agreement is made, and fully understood to be so made, without any standing agreement or reservations whatsoever, direct or indirect, express or implied, to the effect that the Party of the Second Part shall procure a decree of divorce, or the Party of the First Part shall refrain from defending the said *226 suit for divorce; that in the event the Court shall upon the trial fail to grant a decree of divorce to Party of the Second Part, then this agreement shall become null and void so that the parties hereto shall continue in their respective property rights as husband and wife as if this agreement had not been made. Subject to the foregoing provisions the Parties hereto stipulate and agree as follows: 1. Party of the First Part as a part of the agreement to settle the property rights, agrees to convey, assign, transfer and set over and deliver to Second Party all of his right, title and interest, in and to the improved real estate, being a tract of land in the southwest 1/4 of the northeast 1/4 of Section 6, Township 44, North, Range 4 East, in the County of St. Louis, State of Missouri and more particularly described as follows: * * *
subject, however, to the encumbrance against said real property consisting of a First Deed of Trust dated October 30, 1957 and filed of record in St. Louis County, Missouri, as daily number 73 on November 14, 1957 for the unpaid purchase price of said real estate, said unpaid balance and encumbrance being in the sum of $11,479.64 and the encumbrance *227 or unpaid balance due the Manchester Bank and Trust Company on a Federal Housing Administration improvement loan in the unpaid balance of $532.71, it being the intention of the parties hereto that the First Party shall convey, assign and set over unto Second Party all of his right, title and interest in and to said improved real property and that the Second Party accepts the same, subject to the encumbrances of said Deed of Trust for the unpaid purchase price and F.H.A. improvement loan and agrees to indemnity and hold harmless First Party from any and all demands, claims or judgments which may be asserted against Party of the First Part by reason of his liability to the holders of the notes secured by said First Deed of Trust and note guaranteed by the Federal Housing Administration for said improvement loan. 2. Party of the Second Part shall have and retain as her own and absolute property all household furniture and furnishings in the dwelling now owned and occupied by the parties hereto, situated in the County of St. Louis, Missouri, free and clear of any and all liens and encumbrances, and the said Party of the First Part hereby assigns, transfers and sets over unto Party of *228 the Second Part all of his right, title and interest in and to said household furniture and furnishings. Party of the First Part, it is agreed, shall be permitted to remove from said premises all of his personal effects and tools. 3. The parties hereto have concluded that it will be in the best interest of their two minor children if their said children are reared in their present home located in St. Louis County, Missouri, and to that end Party of the First Part conveys his interest in and to said improved real property to the Second Party and the Second Party hereby agrees that if at any time in the future she should sell said improved real estate, upon said sale she will pay to the First Party the sum of Twenty-Five Hundred Dollars ($2,500.00). Party of the Second Part further agrees that in the event she should sell said real property, to first offer it for sale to Party of the First Part and to permit said First Party to meet all bona fide offers to purchase by any other person or corporation. 4. It is further agreed by and between the parties hereto that in the event the Second Party is granted a Decree of Divorce from the First Party, that the First Party shall pay to the *229 Second Party the sum of One Hundred Dollars ($100.00) per month, payable on or before the 10th day of each calender month from the date of the Decree of Divorce until January 31, 1961 and thereafter until January 31, 1976, unless Second Party sooner remarries of dies, whichever occurs first, at which time said payments shall cease and terminate. 5. Party of the First Part hereby agrees to deliver to Party of the Second Part a 1946 convertible Ford automobile, engine number 99A1015090 and hereby assigns, transfers and sets over unto the said Party of the Second Part all of his right, title and interest in and to said automobile, free and clear of all liens and encumbrances whatsoever. 6. Party of the Second Part hereby agrees to assign, transfer and set over unto Party of the First Part all of her right, title and interest in and to a 1957 Ford Fairlane automobile, engine number C-7UV164257, subject to the existing encumbrance in the sum of approximately $1,925.00, and First Party agrees to accept said automobile subject to said encumbrance and agrees to indemnify and hold harmless Party of the Second Part from any and all demands, claims or judgments which may be asserted against *230 Party of the Second Part by reason of her liability to the holder of the note secured by the chattel mortgage on said automobile. * * *
8. Party of the Second Part hereby releases any and all right, title or interest she may have in and to the shares of common stock of Silk Screen Products, a corporation, issued in the name of First Party, and hereby assigns, transfers and sets over unto Party of the First Part any right or title she may have in and to said shares of stock. * * *
13. Party of the Second Part hereby assigns, transfers and sets over unto Party of the First Part all of her right, title and interest in and to all policies of insurance on the life of Party of the First Part, said policies being of the aggregate face value of $40,000.00. 14. Party of the Second Part agrees that in the event a decree of divorce is granted to her, and in consideration of Party of the First Part performing the obligations and agreements herein set forth, to waive all rights to alimony for herself, realizing that if she does not now seek alimony or obtain the same at the time the decree of divorce, if any, is granted, she will be forever barred from recovering or receiving alimony. *231 15. The parties hereto, in consideration of the execution of this mutual agreement and of the property set apart to them on the terms hereof, receive the same in full and complete settlement and release of all claims and demands of every kind, name, or nature against the other party, including all liability now or at any time hereafter existing or accruing, either statutory or arising in common law, incident to the marriage relation, including temporary or permanent alimony, intending hereby to relieve each other from all personal claims and demands and from any that may hereafter attach arising in any manner from the relation of husband and wife and the parties hereby release each other from all claims, demands, or interest whatsoever in any property, real or personal, which the parties may now own or be set off to them, or that they may at any time hereafter hold or acquire any interest whatsoever in, either through devise, bequest, purchase or otherwise, it being understood that this settlement is a total and complete release of the parties hereto, one to the other, of all matters and charges whatsoever. Petitioner and Martha were divorced by a decree of the Circuit Court of *232 St. Louis County on June 2, 1958. The Circuit Court of St. Louis County did not make any provisions in its decree with respect to alimony or with respect to the various property rights of the parties thereto. The decree of the Circuit Court did not incorporate the agreement entered into by the petitioner and Martha on May 15, 1958. The Circuit Court did provide in its divorce decree, pursuant to a stipulation of the parties, that Martha should have custody of the two children and that petitioner should pay her $100 per month for the support of each child. Subsequent to the divorce petitioner conveyed to Martha his interest in the residence described in the agreement dated May 15, 1958. On December 31, 1959, Martha sold the residence conveyed to her by petitioner for $19,000. On that date she received the amount of $4,942.39 from the proceeds of the sale. The remainder of the $19,000 was deducted for first and second trusts, taxes, commissions, and other expenses of sale. In the early part of 1960, Martha investigated other residential property for the purpose of purchasing a residence. At or about this time petitioner and Martha discussed her proposed purchase of residential *233 property. On or about April 14, 1960, Martha purchased another residence. On that date a fee simple interest in the aforesaid residential property was conveyed to Martha by warranty deed. At about the time Martha purchased the residential property in April 1960, she discussed with petitioner a plan of financing the purchase of a new residence. Prior to Martha's purchase of the residence on April 14, 1960, petitioner agreed to cancel the $2,500 indebtedness in order to enable her to make a more substantial down payment on the property than would have been possible if she had paid him the $2,500. Petitioner at that time also agreed to increase the monthly payments to Martha from $100 per month to $150 per month. A formal agreement evidencing petitioner's and Martha's amendment to the predivorce agreement was executed on April 29, 1960. The relevant paragraphs of that agreement are as follows: AMENDMENT TO AGREEMENT BETWEEN, JOHN W. GOFF AND MARTHA LEE GOFF * * * I. Paragraph 3. of said agreement which provides that the Second Party therein, Martha Lee Goff, shall pay to the First Party therein, John W. Goff, the sum of Twenty-Five Hundred Dollars ($2,500.00) upon the *234 sale of the real estate described in said paragraph shall be amended so that the obligation of said Martha Lee Goff to pay said sum to John W. Goff is hereby cancelled and rescinded by mutual consent. The said Martha Lee Goff has sold said real estate and has been required to enter into a contract for another parcel of real estate to be used by her as a home for herself and her two minor children and it is on that account that the said John W. Goff does hereby release her from said obligation to pay said sum of Twenty-Five Hundred Dollars ($2,500.00) to him. II. Paragraph 4. of said agreement provides that John W. Goff shall pay to Martha Lee Goff, in the event that a decree of divorce shall be granted to her, the sum of One Hundred Dollars ($100.00) per month, payable on or before the 10th day of each calendar month beginning with June, 1958 until January 31, 1961 and thereafter until January 31, 1976 unless Second Party shall remarry or die prior thereto. A decree of divorce having been granted to Martha Lee Goff, as is herein stated, said paragraph shall be amended so that the said John W. Goff shall be required to increase said payments to the sum of One Hundred Fifty Dollars *235 ($150.00) per month and said John W. Goff does hereby agree to pay the sum of One Hundred Fifty Dollars ($150.00) per month to the said Martha Lee Goff for her whole use and benefit, to be effective March 10, 1960, subject to the same terms and conditions that are expressed in the agreement of May 15, 1958, that is that each of said payments shall be made on the 10th day of each month beginning with March 10, 1960 and said payments shall conitnue until January 31, 1961 and thereafter until January 31, 1976, unless the said Martha Lee Goff shall remarry prior to said date or die, whichever occurs first, at which time said payments shall cease and terminate. III. The said parties do hereby ratify and confirm the agreement of May 15, 1958 between them as to all of its other terms and conditions and all of the rights and obligations of the parties therein set forth. In petitioner's income tax return for the year 1960 petitioner claimed under "Other Deductions" on page 2 of the return the amount of $2,500 and explained it as follows: Additional alimony payment to Martha Lee Goff under amended written agreement of April 29, 1960 releasing said Martha Lee Goff from payment of $2,500.00 *236 required to be paid to taxpayer upon sale of jointly held real estate. Said release is evidenced by paragraph I of amended written agreement dated April 29, 1960. The Commissioner has disallowed the deduction as heretofore explained. Opinion BLACK, Judge: We have but one issue in this case to decide and that is whether petitioner is entitled to treat the item of $2,500 referred to in our Findings of Fact as additional alimony which he paid his former wife, Martha Lee Goff, in 1960. This item of $2,500 has been rather fully described in our Findings of Fact and we shall not repeat these facts in our Opinion any more than seems necessary to an understanding of our holding on this, the only issue in the case. The monthly payments of alimony paid by petitioner to Martha in 1960 are not involved in this case - they have been allowed by the Commissioner at deductions to petitioner. It is only the $2,500 deduction claimed by petitioner as additional alimony paid to Martha in 1960 that is in controversy. Section 215, Internal Revenue Code of 1954, reads: SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule. - In the case of a husband described in section 71, *237 there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income. Incidentally, we may say that section 71(d) and section 682 of the 1954 Code are not applicable to this proceeding. The portions of section 71 which are applicable to this proceeding are printed in the margin. [1]
*238 It is clear from the record that Martha on December 31, 1959, sold the residential property conveyed to her in the property settlement which was made at or about the time of the divorce and she received $4,942.39 in cash from the sale of this property after all proper deductions were made from the sale price. It is also clear from the record and is undisputed that under the original property settlement she made with her husband she was obligated to pay to petitioner $2,500 out of this $4,942.39 which she received from the sale. It is also clear from the record that Martha arranged to purchase another piece of real property to use as a residence for herself and children. In order to make a more substantial downpayment in cash than she would otherwise have been able to make, petitioner agreed to cancel the payment of $2,500 that she was obligated to make to petitioner if and when the former residence was sold. This release of the $2,500 payment, which Martha was obligated to make, was made by petitioner in an amendment to the original property settlement agreement. The release was made in paragraph I of the amended agreement. In paragraph II of the amendment to the original agreement *239 it was provided that petitioner would pay to Martha $150 per month instead of $100 per month and that "said payments shall continue until January 31, 1961 and thereafter until January 31, 1976, unless the said Martha Lee Goff shall remarry prior to said date or die, whichever occurs first, at which time said payments shall cease and terminate." The Commissioner has allowed as deductions to petitioner these increased payments from $100 a month to $150 a month in the alimony payments which were provided for in paragraph II of the amended agreement. However, as we have already explained, the Commissioner has disallowed as additional alimony the cancellation of Martha's obligation to pay petitioner $2,500 out of the money received from the sale of the house, which cancellation was provided for by paragraph I of the amended agreement. The Commissioner in his deficiency notice stated as a reason for his disallowance: "It is held that the aforesaid sum of $2,500.00 is not includible in the income of your former wife and you are, therefore, not entitled to the deduction of that amount." Assuming that this cancellation of the $2,500, which Martha had agreed to pay to petitioner if and when *240 she sold the residence which had been conveyed to her in the original property settlement between them, was equivalent to a payment by petitioner to Martha in cash to enable her to make a larger downpayment than she otherwise would have been able to make on another house which she had arranged to purchase for the occupation of herself and children, then would such a payment be a periodic payment "(whether or not made at regular intervals) * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation" as provided in section 71(a)(1) of the 1954 Code? We do not think it would be such a payment. In Arthur B. Baer, 16 T.C. 1418 (1951), we held that an agreement between the taxpayer and his wife, incident to a decree of divorce, providing for the payment by him of $35,000 to purchase a home for her and their daughter was not a periodic payment within section 22(k) of the 1939 Code. If the payment of $35,000 by the husband in that case to purchase a home for his divorced wife and their daughter was not a "periodic payment" within the *241 meaning of the applicable statute, we are unable to see how we could hold that the $2,500 payment by petitioner to Martha in the instant case, so she could make a larger downpayment than she would otherwise have been able to make on the new home which she was purchasing for herself and their children, was a periodic payment within section 71(a)(1). The meaning of "periodic payment" as used in section 22(k), I.R.C. 1939, is no different from the meaning of "periodic payment" as used in section 71(a)(1), I.R.C. 1954. In Arthur B. Baer, we said: The concept advocated by the petitioner on this particular point is inconsistent with the view taken by us in Lemuel Alexander Carmichael, 14 T.C. 1356. It is true, of course, that that case involved a fixed total liability, whereas the total liability is here not so fixed; but the Carmichael case is analogous to this one in that petitioner there and the petitioner here attempt to link together as unitary, separate provisions, that is, monthly periodic payments with other payments. We conclude and hold that the $35,000 was not a periodic payment and the petitioner is not entitled to deduct same under section *242 22(k). Cf. Edward Bartsch, 18 T.C. 65 (1952), affd. per curiam 203 F. 2d 715 (C.A. 2, 1953), and Alan E. Ashcraft, Jr., 28 T.C. 356 (1957), affd. 252 F.2d 200 (C.A. 7, 1958). We decide this issue for the respondent. Decision will be entered for the respondent. Footnotes
1. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of Divorce or Separate Maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. * * *
(c) Principal Sum Paid in Installments. - (1) General Rule. - For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.↩