DAVID MAVITY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2422–62.   Filed April 22, 1964.

*Edmund C. Grainger, Jr.*, for the petitioner.
*Robert A. Trevisani*, for the respondent.

#### OPINION

KERN, *Judge:* Respondent determined a deficiency of $8,316.22 in petitioner's Federal income tax for the year 1958. Petitioner has not

assigned error to all of respondent's determinations. In the petition it is alleged that respondent erred in disallowing a deduction claimed by petitioner.for alimony in the amount of $8,600, and that respondent erred in increasing petitioner's business income in the amount of $7,029.77. Petitioner has not presented any evidence nor made any argument on brief with respect to the latter assignment of error. Accordingly petitioner is deemed to have abandoned that issue. The only issue presented for our decision is whether petitioner is entitled to a deduction for alimony payments pursuant to section 215 of the Internal Revenue Code of 1954 in excess of the amount allowed by respondent.

All of the facts have been stipulated and are found accordingly.

Petitioner, David Mavity, is an individual and a resident of Greenwich, Conn. He filed an individual Federal income tax return for the year 1958 with the district director of internal revenue for the Upper Manhattan district of New York on August 17, 1959.

Petitioner and his former wife, Mary Mavity, were married on April 7, 1931, and ceased living together as husband and wife in 1939. On June 30, 1949, petitioner wrote the following letter to his wife:

Dear Mary:

I understand that your doctors have suggested that our complete separation is advisable at this time and furthermore that you are to dispose of the apartment in Pelham.

In line with this I will undertake to place in your account, beginning August 1st, $300. each month, which amount it is to be understood will cover all your expenses.

I trust that this arrangement will prove agreeable to you and that you will soon be feeling much better.

Sincerely,

(S) David

The payments called for in the June 30, 1949, letter were made regularly by petitioner up to and including December 1953. In January 1954 petitioner, through his attorney, sent his wife $300. In August 1954 he sent her $1,000. He made no further payments.

On May 1, 1955, petitioner's wife commenced an action against him in the Court of Common Pleas, Fairfield County, Conn. In that action petitioner's wife sought the recovery from him of a total of $3,500, representing $300 per month from the period petitioner had ceased paying her until the date of commencement of the action, less the two payments totaling $1,300. The action was tried on February 6, 1957, and resulted in a decision for petitioner's wife. Judgment was entered against petitioner on March 14, 1957, for $3,500 plus interest and costs, making a total of $4,030.83.

Petitioner appealed the decision to the Supreme Court of Errors of the State of Connecticut. In the meantime petitioner's wife, on April 25, 1956, commenced a separate action against him in the U.S. District Court for the Southern District of New York seeking to recover $300 per month from May 1, 1955 (the period at which the Connecticut action stopped), to the date of the filing of the complaint. Petitioner's attorneys advised him that the decision of the court in Connecticut would be binding on a court in New York. Thereupon petitioner and his wife entered into a separation agreement. The agreement was signed by petitioner's wife on August 12, 1958, and by petitioner on August 15, 1958. The agreement provided in pertinent part as follows:

4. Immediately upon the request of the husband, the wife agrees to execute a waiver of dower of any interest she may have because of her having been his wife, satisfactory to the lender for the purpose of inducing the loan by the lender of $8,000. on the unimproved property owned by the husband in Parrish Township, Benton County, Indiana, and upon receipt thereof, the husband agrees to borrow from the lender $8,000. and to mortgage such property as security therefor and upon receipt of such $8,000. forthwith but in no event later than August 1st, 1958, to pay that sum of money to Buckley and Buckley, the attorneys for the wife, and upon receipt of such payment the wife agrees to acknowledge the receipt thereof and to accept the aforesaid sum of $8,000. from the husband as and for a satisfactory, reasonable and sufficient provision for her support and maintenance past, present and future and for the discharge and payment of any and all debts or obligations owed by the wife up to and including the date of which such payment is made, in connection with which in particular she agrees as follows:—

(a) to deliver to the husband a general release in a form satisfactory to discharge him from any claims of any kind or character against him which she may have or any third persons may claim through her because of services rendered to her; but such release shall specifically exclude a release from the payment of $300.00 per month from the 1st day of January, 1958, pursuant to this agreement and/or any other or prior agreement, including the agreement sued upon by the wife in the State of Connecticut. The wife agrees, however, that she will upon receipt by Buckley and Buckley of the $8,000 referred to in Paragraph 5 hereof, deliver a general release to her husband for all claims she has against him for support and maintenance for each of the months of January, February, March, April and May in the year 1958, and that upon receipt by Buckley and Buckley of checks in the amount of $300 each she will also execute a general release covering any claims by her for the support and maintenance by her husband for the months of June and July, 1958.

(b) to acknowledge the payment and satisfaction of any judgment she may have against the husband in the State of Connecticut and to execute a satisfaction piece, or such other legal document as shall reflect such payment and satisfaction of any such judgment and to have such legal document recorded so that the payment and satisfaction of such judgment is recorded as a matter of public record;

(c) to pay and discharge the fees of any firm of attorneys which has acted for her, or on her behalf, in the State of Connecticut, by virtue of which that firm has any claim against her or her husband, and to deliver to the husband a written acknowledgement by any such firm of the receipt of such payment.

(d) to secure the release of any attachment of any real property which has been levied in the State of Connecticut, or elsewhere, against any property, real or personal, belonging to the husband and to record such release as a matter of public record.

(e) to cease and discontinue any actions or proceedings against the husband in any Court other than in the State of Connecticut and to record such discontinuance as a matter of public record;

(f) to pay and discharge to Buckley and Buckley any and all monies due them for legal services to be rendered for the wife up to the date of this agreement and for one year thereafter;

(g) in the event that the wife shall commence any proceedings for divorce, to pay and discharge from the aforesaid sum any fee or costs which may be incurred or required for any such divorce proceedings.

5. Buckley and Buckley agree to the application of the $8,000. as aforesaid and that they will be paid by the wife out of such $8,000. any fees and disbursements incurred by the wife and owed by the wife or the husband up to the date of this agreement, and for a period of six months thereafter, and to hold such sum as shall remain after the payment of the items hereinbefore described in escrow, so that in the event the wife shall have procured a divorce within six months of the date of the execution of this agreement, then and in that event Buckley and Buckley are authorized to pay over to the wife any monies thus held in escrow; but should such a divorce not have been procured by the wife, then and in that event Buckley and Buckley are instructed to pay such monies to the husband, with the exception that the husband agrees as follows:–

To pay to the wife each month commencing with the month of January, 1958, for the wife's support and maintenance during her natural life the sum of $300. per month so that $1,500. of the aforesaid $8,000. is and shall be constituted as payments on account of the aforesaid monthly indebtedness of $1,500., $300. for the months of January, February, March, April and May respectively, and after the execution of this agreement and the payment of the $8,000. as aforesaid, and commencing with the first of June, 1958, the husband shall pay to the wife on the first of each month thereafter the sum of $300. until such time as the wife shall die or remarry, in either of which events the obligation of the husband to pay shall thereupon cease and terminate. In the event the husband predeceases the wife, the husband does hereby agree for himself, his heirs, distributees and representatives that the said $300. per month shall be paid to the wife until such time as she shall die or remarry. Such payments are to be made by the Executors or Administrators of the husband, or, in the event that a Trustee or Trustees are designated and appointed for such purpose, such payments are to be made by such Trustee or Trustees, and the same shall be a charge upon all of the estate, real and personal, of which the husband may die seized.

6. The wife agrees to accept and hereby accepts the aforesaid payments as and for a satisfactory, reasonable, and sufficient provision for her support and maintenance, past, present and future and for the discharge of any debts or obligations which she may have incurred, or may incur, and in full discharge, settlement and satisfaction of any claim for support she may have for the rest of her life or until she shall remarry. The wife agrees, therefore, that should the husband at any time thereafter be required to pay to any third person any monies on account of a debt incurred by the wife which the creditor establishes as a debt also of the husband, that the husband may deduct and charge against any monies that may be due or become due hereunder from the husband to the wife the amount of any such payment, after reasonable notice, in writing, of the creditors' claim to the wife, so as to afford the wife an opportunity to dispute the same if such claim is unwarranted.

It is stipulated that the $8,600 here in issue was paid by petitioner, in accordance with the terms of the above agreement, as follows:

| | |
|---|---|
| July 25, 1958 | $8,000. |
| July 25, 1958 | 300 for June. |
| July 25, 1958 | 300 for July. |

Petitioner's wife obtained an absolute divorce on February 13, 1959, in the District of Columbia where she then resided.

On his Federal income tax return for 1958 petitioner claimed as an alimony deduction the sum of $10,100 which he paid to his wife in 1958. Of this amount respondent allowed as a deduction $1,500 representing payments of $300 per month made by petitioner pursuant to the separation agreement for the months of August through December 1958. Respondent disallowed the remainder, $8,600, which was paid by petitioner to his wife on July 25, 1958. Of this amount $1,500 was paid in satisfaction of petitioner's obligation to support and maintain his wife during January, February, March, April, and May of 1958, $600 was paid in satisfaction of petitioner's obligation to support and maintain his wife during June and July of 1958, and the balance was paid in satisfaction of, among other things, the Connecticut judgment and all other arrearages owed by petitioner to his wife.

The question presented for our decision is whether the sum of $8,600 paid by petitioner to his wife on July 25, 1958, in settlement of arrearages in alimony or separate maintenance, pursuant to an agreement between petitioner and his wife executed in August 1958, is deductible by petitioner as alimony and separate maintenance payments. Petitioner contends that the payments he made are deductible under sections 215 [1] and 71 (a) [2] of the Internal Revenue Code of 1954, as periodic

[1] SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

[2] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

(2) WRITTEN SEPARATION AGREEMENT.—If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.

(3) DECREE FOR SUPPORT.—If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.

payments received by his wife pursuant to a written separation agreement and/or as periodic payments received by his wife under a decree entered after March 1, 1954, requiring petitioner to make the payments for his wife's support or maintenance.

Respondent argues that since the $8,600 paid by petitioner to his wife in 1958 in settlement of arrearages for alimony would not have been deductible if paid when due, the deduction is not allowable when payment was subsequently made in a lump sum.

Section 215 of the Internal Revenue Code of 1954 allows as a deduction to petitioner amounts paid to his wife which are includable under section 71 in the gross income of his wife. Alimony and separate maintenance payments are includable in a wife's gross income if the payments come within the provisions of section 71(a) (1), (2), or (3).

Section 71(a) (1) provides that periodic payments made by a husband under a decree of divorce or separate maintenance are includable in the wife's gross income. Petitioner does not claim that the payments would have been includable in his wife's gross income under this section, and the record herein shows that the payments were not made under a decree of divorce or separate maintenance.

Petitioner first contends that the payments made pursuant to the separation agreement in August 1958 are includable in his wife's gross income under the provisions of section 71(a) (2). That section provides that the gross income of a wife who is separated from her husband includes periodic payments received because of the marital relationship and under a written separation agreement. The payments must be received after the execution of the agreement, and the agreement must be executed subsequent to August 16, 1954, the date of the enactment of the pertinent statute.

The separation agreement between petitioner and his wife which was executed by petitioner on August 15, 1958, and by his wife on August 12, 1958, provided that petitioner was to pay over to his wife's attorneys $8,000 no later than August 1, 1958. Petitioner also agreed to pay to his wife $300 for each of the months of June and July 1958, and $300 per month for the remainder of his wife's life or until she died or remarried. In consideration for the payment of $8,000 and two checks in the amount of $300 each,[3] petitioner's wife agreed, among other things, to accept such sums as "a satisfactory, reasonable, and sufficient provision for her support and maintenance, past, present and future." She agreed to deliver a general release to petitioner for all claims she had against him for support and maintenance for the months January through July 1958, to acknowledge the payment and satisfaction of the judgment she had against petitioner in Connecticut,

---

[3] Plus petitioner's agreement to make periodic payments in the future.

and to discontinue the court proceedings she commenced against her husband in the U.S. District Court in New York.

Respondent has allowed a deduction for the payments made for August 1958 and for all subsequent months, and such payments are not here in issue. It has been stipulated that petitioner paid $8,600 on July 25, 1958, in accordance with the terms of the separation agreement. This agreement was not signed by the petitioner until August 15, 1958, and by the petitioner's wife until August 12, 1958. Inasmuch as these payments were not received *after* the agreement was executed, the payments are not includable in the gross income of petitioner's wife under the terms of section 71(a)(2), and hence they are not deductible by petitioner.[4] Deductions are a matter of legislative grace and "a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms." *New Colonial Co.* v. *Helvering*, 292 U.S. 435. See also *John W. Furrow, Jr.*, 34 T.C. 931, 935, affd. 292 F. 2d 604.

Even if petitioner had made the payments here in issue in due course he could not have deducted them pursuant to section 71(a)(2). It is a well-settled rule, which petitioner states on brief, that a lump sum paid in settlement of arrearages in alimony retains the characteristics the original payments would have had if made in due course. *Virginia B. Adriance Davis*, 41 T.C. 815; *Sarah Dalton*, 34 T.C. 879; *Margaret O. White*, 24 T.C. 452; *Antoinette L. Holahan*, 21 T.C. 451, affd. 222 F. 2d 82; *Jane C. Grant*, 18 T.C. 1013, affd. 209 F. 2d 430; *Elsie B. Gale*, 13 T.C. 661, affd. 191 F. 2d 79. Prior to July 25, 1958, the date on which petitioner made the payments in issue, there was no such written separation agreement between petitioner and his wife as required in section 71(a)(2). The letter written by petitioner to his wife on June 30, 1949, if it be a written separation agreement within the meaning of the statute, does not qualify under the statute because it was executed prior to August 16, 1954. See *John W. Furrow, Jr., supra*. Assuming that the agreement made in August 1958 between petitioner and his wife was an alteration or modification of the "agreement" of June 30, 1949, petitioner's letter cannot be treated as an agreement executed after August 16, 1954, with respect to payments made prior to the date of alteration or modification. See sec. 1.71–1(b)(2)(ii), Income Tax Regs.[5]

---

[4] The case of *B. R. DeWitt*, 31 T.C. 554, revd. 277 F. 2d 720, is obviously distinguished from the instant case in that in the *DeWitt* case the payments were received *subsequent to* the decree of divorce.

[5] Sec. 1.71–1 Alimony and separate maintenance payments; income to wife or former wife.

(b) *Alimony or separate maintenance payments received from the husband—* * * *

(2) *Written separation agreement.* * * *

(ii) For purposes of section 71(a)(2), any written separation agreement executed on or before August 16, 1954, which is altered or modified in writing by the parties in any material respect after that date will be treated as an agreement executed after August 16, 1954, with respect to payments made after the date of alteration or modification.

Petitioner also relies on section 71(a)(3) which requires a wife to include in her gross income periodic payments received by the wife after August 16, 1954, which the husband is required to make for the wife's support or maintenance under a decree entered after March 1, 1954. Petitioner argues that pursuant to this section the payments amounting to $8,600 made by petitioner to his wife are deductible under the decree entered in Connecticut on March 14, 1957, awarding petitioner's wife $4,030.83, and under the action commenced in the U.S. District Court in New York in which petitioner was advised by his attorneys that the Connecticut action would control.

Section 71(a)(3) is designed to make taxable to a wife and deductible to a husband alimony payments "where a wife is separated from her husband if she receives periodic payments from him under *any* type of decree (entered after the date of enactment of this bill) requiring the husband to make payments for her support and maintenance." (Emphasis supplied.) S. Rept. No. 1622, 83d Cong., 2d Sess., p. 10. It would appear that the judgment entered by the Connecticut court does constitute a decree entered after March 1, 1954, requiring petitioner to make a payment for his wife's support or maintenance, within the meaning of section 71(a)(3). See *Constance B. Kirby*, 35 T.C. 306. However, the judgment of that court, pursuant to which petitioner's wife was awarded $4,030.83 in damages, does not constitute a decree requiring petitioner to make periodic payments to his wife. Payments made in discharge of an obligation to pay a principal sum specified in a decree (where the period for payment is less than 10 years) do not constitute periodic payments. See sec. 71(c), I.R.C. 1954; *Lounsbury* v. *Commissioner*, 321 F. 2d 925, affirming 37 T.C. 163; *John W. Furrow, Jr., supra*; and *Ellert* v. *Commissioner*, 311 F. 2d 707, affirming a Memorandum Opinion of this Court.

Petitioner argues that although the judgment entered in the Connecticut court required petitioner to pay a lump sum, such lump sum was paid in settlement of arrearages in alimony which retain the characteristics the original payments would have had in due course. Petitioner relies on *Elsie B. Gale, supra; Antoinette L. Holahan, supra; Jane C. Grant, supra;* and *Margaret O. White, supra.* See also *Virginia B. Adriance Davis, supra;* and *Sarah Dalton, supra.* However, it should be noted that in each of these cases it was held that the payments in issue would have been includable in the wife's gross income under the applicable statutes if they had been received when they were due and payable, while in the instant case, as we have demonstrated above, if the payments had been made in due course they would not have been includable in the gross income of petitioner's wife as payments made pursuant to a decree of divorce or separate

maintenance, a written separation agreement, or a decree for support within the meaning of any provision of section 71(a).

The amounts here in issue do not qualify as amounts includable in the gross income of petitioner's wife under section 71(a). Therefore, petitioner is not entitled to deduct such amounts.

*Decision will be entered for the respondent.*