David MAVITY, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 223, Docket 29107.

United States Court of Appeals
Second Circuit.

Argued Jan. 7, 1965.

Decided Feb. 26, 1965.

Edmund C. Grainger, Jr., New York City (O'Brien, Driscoll & Raftery, New York City, on the brief), for petitioner.

Edward L. Rogers, Attorney, Department of Justice, Washington, D. C., (Louis F. Oberdorfer, Ass't. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attorneys, Dep't of Justice, on the brief), for respondent.

Before LUMBARD, Chief Judge, WATERMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge.

Petitioner seeks review of a decision of the Tax Court disallowing a deduction of $8,600 paid in 1958 for the support of his wife.

The stipulation of facts upon which the Tax Court based its decision shows that petitioner and his wife were married in 1931 and ceased living together in 1939. In 1949 the petitioner wrote his wife stating that he would "undertake to place in your account, beginning August 1st, [1949] $300 each month, which amount it is to be understood will cover all your expenses."

The petitioner made his last regular payment under this agreement in January 1954. In August of 1954 he sent his wife $1000 but made no further payments until 1958.

In 1955 the wife brought an action in a Connecticut court to enforce the agreement represented by the 1949 letter. This action resulted in a judgment for the wife for $3500, together with interest, to cover all arrears from January 1954 to April 1955. Petitioner appealed from this decision and the appeal was still pending in 1958.

In 1956 the wife brought another action in the United States District Court for the Southern District of New York for the collection of arrears from May 1955 to April 1956. However, before either the appeal or the federal action was concluded, petitioner's attorneys advised him that the Connecticut decision would be res judicata in New York. Thereupon in the summer of 1958 petitioner and his wife negotiated a new separation agreement providing for the settlement of all unsettled obligations of petitioner to his wife.

Under paragraphs 4 and 5 of the agreement [1] the petitioner agreed to pay $8000 which the wife was to accept as "a satisfactory, reasonable and sufficient provision for her support and maintenance past, present and future." She agreed specifically to execute a general release of her claims against her husband excluding, however, his obligation to pay $300 per month from January 1, 1958, "pursuant to this agreement and/or any other or prior agreement, including the agreement sued upon by the wife in the State of Connecticut." In exchange for the $8000 she would also release the claims for payments for the months from January through May 1958 and, for $600 more, payments for the months of June and July 1958. She also agreed to execute a satisfaction piece for the Connecticut judgment and to discontinue the New York action.

On July 25, 1958, the petitioner paid $8600 to the wife's attorneys to be held in escrow by them. The agreement was executed and acknowledged by the wife on August 12, 1958, and by the petitioner on August 15, 1958.

In his 1958 income tax return the petitioner claimed a deduction of $10,100. The Commissioner allowed $1500, representing payment under the agreement for the months of August through December. He disallowed $8600.

The Tax Court affirmed the disallowance, basing its decision on its reading of Sections 71(a) (2) and (3) of the Internal Revenue Code of 1954. 42 T.C. 283 (1964).

---

1. Paragraphs 4-6 of the August 1958 separation agreement are quoted in full in 42 T.C. 283, 285-286 (1964).

In effect, Section 71(a) (2) [2] requires the inclusion in income by the wife of alimony and separate maintenance payments if

(1) the husband and wife are separated;

(2) a written separation agreement is executed after August 16, 1954;

(3) the payments are periodic (whether or not made at regular intervals);

(4) the payments are received after the agreement is executed;

(5) the payments are made under the agreement and because of the marital or family relationship; and

(6) the husband and wife do not file a joint return.

Section 71(a) (3) [3] requires the inclusion in the wife's income of such payments if

(1) the husband and wife are separated;

(2) the payments are made under a decree entered after March 1, 1954, requiring payments for support or maintenance of the wife;

(3) the payments are periodic (whether or not made at regular intervals);

(4) the payments are received after August 16, 1954; and

(5) the husband and wife do not file a joint return.

Section 215 [4] permits the deduction by the husband of such payments if they are includible in the wife's income under Section 71(a) and are made within the husband's taxable year.

The Tax Court held that the payment of $8600 did not qualify under Section 71(a) (2) because (1) it was made before the execution of the separation agreement, and (2) it was paid with respect to periods of time for which the periodic payments would not have qualified had they been made when due.

In holding that the payment was made before the agreement was executed the tax court is clearly in error. The payment to the wife's attorneys under the escrow agreement did not constitute payment to the wife. Moreover the statute requires that the payment be "received" by the wife after the execution of the agreement. Clearly the wife did not receive the payment until both she and her husband had signed the agreement and it had become effective.

The respondent's principal argument for disallowance of the deduction is that the Code does not "permit a taxpayer to effect a retroactive operation of a separa-

2. "Written separation agreement.

"If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly."

3. "Decree for support.

"If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly."

4. "§ 215. Alimony, etc., payments.

"(a) General rule.

"In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income."

tion agreement or decree of support and to obtain a deduction for the arrearages when paid, [if] * * * that amount would concededly not have been deductible under the statute then in effect if paid during the period which it covered."

This rule is not based on any specific statutory provision. There are cases which support both this position and its contrary.

The original legislation adopted in 1942 recognized the hardship and inequity of not permitting deduction of alimony payments from a husband's adjustable gross income.[5] The Revenue Act of 1942 added Section 22(k) to the Internal Revenue Code of 1939 [6] requiring the taxation of alimony payments as part of the wife's income and Section 23(u) [7] which permitted the deduction of alimony from the husband's income, if

(1) the husband and wife were divorced or legally separated under a decree of divorce or legal separation;

(2) payments were periodic (whether or not made at regular intervals);

(3) payments were made to discharge legal obligations arising out of the marital or family relationship;

(4) payments were made pursuant to a decree of divorce or legal separation or incurred under a written instrument "incident to" such decree; and

(5) payments were made subsequent to the decree.

The courts construing this section did not permit this type of relief to spouses who were not divorced or separated by court decree or where payments were made voluntarily and were not "incident to" a decree of divorce or separation.[8] In 1954, after the benefits of split income had been made available to married persons, amendments were proposed to afford relief to those who made payments for support under consensual agreements.[9] After passage of this measure in the House, the Senate committee recommended that this relief be limited "to written separation agreements executed after the date of enactment of this bill." [10] The purpose of the amendment restricting application to post-1954 separation agreements was

"in order to prevent the upsetting of arrangements which already have been worked out with the understanding that the wife would not include the payments in her income. In such cases it appears probable that tax effects were taken into account in determining the size of the payments." [11]

5. H.R.Rep. No. 2333, 77th Cong., 2d Sess. 46 (1942).

6. "Alimony, etc., income.
    "In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife * * *."

7. "In computing net income there shall be allowed as deductions:
    "Alimony, etc., payments. In the case of a husband described in section

22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year. * * *"

8. See, e. g., Smith v. Commissioner, 168 F. 2d 446 (2d Cir. 1948); Daine v. Commissioner, 168 F.2d 449, 4 A.L.R.2d 248 (2d Cir. 1948). See generally 5 Mertens, Federal Income Taxation § 31A.01, at 5-8 (rev. ed. 1964).

9. See Lagomarcino, Federal Tax Consequences of Alimony and Separate Maintenance Payments, 3 Buffalo L.Rev. 179, 215-16 (1954).

10. S.Rep. No. 1622, 83d Cong., 2d Sess. 10 (1954), [1954] 3 U.S.Code Cong. & Admin.News, p. 4640.

11. Id. at 10-11.

Where no question is raised as to the tax effect on the wife [12] there exists no sound reason in tax policy to deny persons who were genuinely separated under a pre-1954 agreement the benefit intended to be equivalent in part to the split income provisions merely because the periods for which the payments were due preceded the fulfillment of the formal requirement of a post-1954 agreement.

This was the approach of this court in construing the provisions of the 1942 amendment in Gale v. Commissioner, 191 F.2d 79 (2d Cir. 1951), Newton v. Pedrick, 212 F.2d 357 (2d Cir. 1954), and Holahan v. Commissioner, 222 F.2d 82 (2d Cir. 1955). In Gale, we affirmed the Commissioner's inclusion in the wife's 1944 gross income of $19,000 paid in lump sum for additional payments for the period 1941–1943 which were decreed by a 1944 amendment of a 1940 divorce decree. In the Newton case the court, with Circuit Judge (now Mr. Justice) Harlan writing, determined that a post-decree amendment of a separation agreement could retroactively qualify payments made in addition to those required by the original agreement. He held that the additional payments need not be "incident to" the decree, but need only be "incident to" the status of divorce or separation. In his opinion Judge Harlan said:

"There is nothing in the statute or its legislative background which suggests that it was intended that the equitable distribution of the tax burdens resulting from the adjustment of marital or family financial obligations in connection with a dissolution of the marriage relationship, which the statute aimed to achieve, should be limited to those arrangements effected at the time of a decree of divorce or separation,

without regard to their possible future rearrangement in consequence of later and perhaps unforeseen vicissitudes." 212 F.2d at 361.[13]

In Holahan the Commissioner's inclusion in a wife's 1949 income of payments of arrears made to her in settlement of the husband's obligation for a period from 1928, when they were divorced, to 1949 was affirmed by this court. The court found no difficulty with the fact that the payments for the years from 1928 until the amendment of the Code in 1942 would not have been chargeable to the wife if they had been made when due.

These three cases establish that this court has not followed the rule that payments of arrears do not qualify if they would not have been deductible if paid when due.

The Commissioner cites Daine v. Commissioner, 168 F.2d 449 (2d Cir. 1948), and Commissioner v. DeWitt, 277 F.2d 720 (2d Cir. 1960), in support of the rule. In Daine this court disallowed the deduction from the husband's 1943 income of support payments made under a 1940 separation agreement embodied *nunc pro tunc* in a 1944 separation decree. The court refused deduction under the *nunc pro tunc* decree on the ground that the New York court could not establish the fact of legal separation for federal tax purposes as of a date when there was no legal separation in reality.[14]

In DeWitt, there was an attempt to qualify under Section 22(k), payment made to the wife by agreement for a period of seven months preceding the final divorce decree. The court construed the statute to require that "[u]ntil this new status came into being the husband had to maintain and support the family without any deduction for so doing." [15]

---

12. We express no opinion as to the tax liability of the wife. Compare Newton v. Pedrick, 212 F.2d 357 (2d Cir. 1954) (husband's case), with Heath v. Commissioner, 265 F.2d 662 (2d Cir.), cert. denied, 361 U.S. 824, 80 S.Ct. 70, 4 L.Ed. 2d 68 (1959), affirming 30 T.C. 339 (1958) (wife's case).

13. Accord, Hollander v. Commissioner, 248 F.2d 523, 527 (9th Cir. 1957).

14. 168 F.2d at 451.

15. 277 F.2d at 722.

Since the Daine and DeWitt cases depend for their result on the requirement of the Internal Revenue Code of 1939 that the payments be incident to a decree of separation or divorce, they have been overruled by the 1954 amendments, which permit marital parties voluntarily to adjust the incidence of taxation with respect to support and maintenance payments. To deny the application under a post-1954 separation agreement of these amendments to periods of time during which the parties were actually separated and payments were due under a pre-1954 agreement but before they had reached a formal post-1954 agreement would be to nullify in part the legislative recognition that a voluntary separation is as deserving of this type of treatment as is a separation by court decree.

In the instant case, there was a valid and enforceable separation agreement, and payments under it would have qualified under the 1954 amendments except for the fact that the agreement preceded August 16, 1954. If the agreement had been modified after that date but before arrears had accrued, the payments made under the modification would then have qualified. The fact here that the arrears accrued before the qualifying modification does not, we think, violate the purpose of the amendments, i. e., to permit the separated parties to adjust their tax status without requiring a prior court decree.

The respondent's further contention that payments of arrears do not qualify because they are not "periodic * * * (whether or not made at regular intervals)" is contrary not only to the language of the statute but to the decisions of this court. E. g., Gale v. Commissioner, supra.

The petitioner also contends that the $8600 payment qualifies under Section 71(a) (3) of the Code because it was made "under a decree [i. e., the judgment of the Connecticut court] entered after March 1, 1954, requiring the husband to make the payments for * * * [the wife's] support or maintenance." Respondent's argument under this head that the payments would not have been deductible if paid when they were due is the same argument as that advanced under Section 71(a) (2) and is rejected for the same reason.

A decree for enforcement of a consensual separation agreement qualifies under Section 71(a) (3). The Commissioner argues, however, that of the $8600 actually paid by the husband, at most the $3500 claimed and awarded in the Connecticut court could be said to be made *under* that decree. Even that amount, he argues, was not *under* the decree because the Connecticut decision was appealed and the whole $8600 payment was actually made in accordance with the 1958 agreement and not the Connecticut decree. However, it is clear that the 1958 agreement was largely brought about by the Connecticut decree. In any event the point is that even absent the 1958 agreement the $8600 was due under the law established by the Connecticut judgment.

Thus, petitioner's deduction of $8600 is allowable by reason of Section 215 under both Sections 71(a) (2) and (3) of the Code. The decision of the tax court to the contrary is reversed.

Reversed.